UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRANKIE E. WHEAT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5068** |
| **M. MATT DURAND, L.L.C., ET AL.** | **SECTION "J" (3)** |

## ORDER

Before the Court is the Motion to Compel Discovery [Doc. #46] filed by plaintiff Frankie E. Wheat. For the following reasons, the Court grants in part and denies in part the motion.

**I.     Background**

The complaint alleges as follows. M. Matt Durand, L.L.C. ("MMD" or "defendant") is a marine construction company located in St. Martinville, Louisiana. Sometime prior to August 2010, MMD contracted with the Corps of Engineers for the construction of a levee in St. Bernard Parish. Much of the fill and material used to construct the levee was brought by barges from Port Bienville, Mississippi. Wheat's initial job assignment with MMD was preparing the roads around Port Bienveille to load barges with fill material to be transported on barges across Lake Ponchartrain to the job site. Once the site at Port Bienville was ready, the crews from MMD would load the barges at Port Bienville and on arrival at the job site, the barges would be unloaded by employees of MMD. The barges used by MMD on this project were in shoddy condition with numerous leaks and, as a

consequence, it was necessary to continually pump the barges free from water which would accumulate in the holds.

After completion of the work to prepare the site at Port Bienville, MMD assigned Wheat to work on the barges in the port to ensure that each barge had been pumped free of water and was ready to transport material across the open water to the job site. On August 20, 2010, Wheat was helping a co-employee, Rainey Riley, bring a large pump onto one of the barges to ready it for loading. With Riley in the lead and Wheat following with one hand on the pump and the other carrying a hose, the pair attempted to walk along the edge of the barge. As they approached the hatch cover, Riley stepped over the open hatch cover; however, because Wheat's view of the hatch cover was obscured by the pump, he stepped in the open hole, fell and injured himself. Wheat sustained injuries to his neck, back and other parts of his body.

Wheat then sued MMD and other defendants – many of whom have been dismissed or have not been served – in this Court under the Jones Act and the general maritime laws.

**II.    Law and Analysis**

Wheat contends that MMD has failed to sufficiently respond to some of his discovery requests.

Interrogatory ("Int.") No. 2 asks defendant to "[i]denitfy all persons known to you or whom you believe to be witnesses to the incident or any events leading up to or immediately following the incident, and provide a detailed description of any testimony you may elicit from each such person." Int. No. 3 asks defendant to "[i]dentify and provide a general description of the job duties of all persons who were in the vicinity of the barge where the incident occurred at the time of the incident." Wheat recognizes that defendant supplemented its production to Int. No. 2 by providing

contact information but argues that defendant did not provide contact information for every witness. MMD contends that the only contact information that it did not provide is that of current employees who still work for it, as Wheat must contact them through it. MMD also notes that it informed Wheat that it expected each witness to testify that Wheat fell because "he did not watch where he was going." MMD argues that it is premature to know all of the information as to which each witness will testify. And with regard to Int. No. 3, MMD maintains that it has fully responded to the request by listing each worker assigned to the same project as Wheat and providing the descriptions of each then-employee's occupation code. With regard to these two discovery requests, the Court finds that MMD has sufficiently responded at this time but reminds defendant to supplement its responses as required under the Federal Rules of Civil Procedure. The motion is denied as to these two requests.

Request for Production ("RFP") No. 5 seeks any documents related to the daily activities on the project such as logs, journals, diaries, and the like from January 1, 2008 through November 20, 2010. MMD contends that the RFP is overbroad and unduly burdensome but produced all of Wheat's time sheets for his entire work history with it. The Court sustains MMD's objections in part, finding that the RFP is overbroad temporally. However, the Court grants the motion in part and orders MMD to produce all logs, journals, diaries, and the like that relate to the project for July through September 2010. Such documents are reasonably calculated to lead to the discovery of admissible evidence.

With regard to Int. No. 5 and RFP No. 6, Wheat seeks at this time the recorded statements given by his co-workers, Dale Hodges and Rainey Riley. Hodges made a statement to MMD on the date of the incident, and Riley gave one six days after it. MMD has agreed to produce the statement

of Hodges. It argues, however, that the statement of Riley is protected from production by the work-product privilege. MMD maintains that at the time of Riley's statement, it was well aware of the extent of Wheat's injuries and anticipated litigation.

The work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Blockbuster Entm't Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 403 (M.D. La. 1992). It protects two categories of materials: ordinary work-product and opinion work product. *Snowden v. Connaught Lab. Inc.*, 137 F.R.D. 325, 330-32 (D. Kan. 1991); *see generally Upjohn Co. v. United States*, 449 U.S. 383, 400-02 (1981).

However, the doctrine is not an umbrella that shades all materials prepared by a lawyer or an agent of the client. It focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from the work-product doctrine are materials assembled in the ordinary course of business. *United States v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982). It also does not extend to the underlying facts relevant to the litigation. *See Upjohn*, 449 U.S. at 395-96.

To determine whether a document was made in anticipation of litigation, the primary focus is on the reason or purpose for creating the document. *Beal v. Treasure Chest Casino*, No. 98–0786, 1999 WL 461970,*3 (E.D. La. July 1, 1999). Moreover, the burden of showing that documents were prepared in anticipation of litigation, and therefore constitute work product, falls on the party seeking to protect the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173 F.R.D. 431, 432 (E.D. La. 1997). The Court now turns to an analysis of Riley's statement and whether it should be shielded from discovery pursuant to the work-product doctrine.

MMD contends that because Riley's statement was taken six days after the accident, it was taken in anticipation of litigation and is therefore MMD's protected work product. However, this

4

fact is not pivotal to the work-product determination. Indeed, the case law is clear that while a document created before a complaint is filed does not exempt it from work-product protection, the converse is also true. The mere fact that litigation is pending does not transform everything done by or for a party into work product worthy of protection. *See Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332 (4th Cir. 1992). Instead, the key to determining work-product protection is the primary motivating purpose behind the creation of the document. *See United States v. Davis*, 636 F.2d 10289, 1040 (5th Cir. 1981).

Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document, *see Fine v. Bellefonte Underwriters Ins.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981); *Spaulding v. Denton*, 68 F.R.D. 342, 345 (D. Del. 1975), and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. *See Atlanta Coca-Cola Bottling Co. v. Transamerica, Inc.*, 61 F.R.D. 115, 118 (N.D. Ga. 1972). If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation. *See e.g., First Pac. Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574 (N.D. Cal. 1995).

For example, courts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of maritime companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely-generated documents with work-product protection. *See Atlanta Coca-Cola Bottling, Co.*, 61 F.R.D. at 118.

Here, MMD provides the Court with only the following information: It took the statement

5

of Riley six days after the accident and after it realized the extent of Wheat's injuries. MMD does not provide the Court with specific information as to who took the statement or whether whoever took the statement is routinely used by MMD to investigate and adjust on-scene accident claims. From the scant information provided, the Court, however, deduces that MMD takes similar statements as part of its routine business when it investigates accidents: Indeed, it took the statement of Hodges on the day that the accident occurred. MMD also does not provide the Court with any information as to the date counsel was formally retained.

As the party withholding documents from discovery, the burden is on MMD to establish work-product protection. *St. James*, 173 F.R.D. at 432. The information provided to the Court does not satisfy MMD's burden of demonstrating that the primary motivating purpose in securing Riley's statement was in furtherance of a sufficiently-identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resolvable claim. *See Fine*, 91 F.R.D. at 423. In this respect, Wheat's request to compel MMD to produce Riley's witness statement is granted.

### III.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Compel Discovery [Doc. #46] is GRANTED IN PART and DENIED IN PART as outlined above.

New Orleans, Louisiana, this 22nd day of December, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**